The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JAY MICHAUD,

Defendant.

NO. CR15-5351RJB

GOVERNMENT'S SUBMISSION
REGARDING DISCOVERY SANCTION
AND DEFENDANT'S MOTION TO
DISMISS

## I.    INTRODUCTION

On May 6, 2016, the Court partially granted the government's motion for reconsideration of its discovery order, concluding the discovery at issue was properly withheld from the defendant.  The Court declined to revisit its conclusion that this discovery—though properly withheld—is material and ordered additional briefing on the question of what, if any, sanctions should be imposed on the government for nondisclosure. The court clarified its ruling via written order on May 18. Dkt. 205.

*First*, a discovery sanction is unwarranted because the law enforcement privilege provides good cause for the Court to deny the requested discovery.  That doctrine contemplates exactly the situation here:  where the government possesses information deemed material but where the government has "made a sufficient showing" that the information should not be produced even under a protective order.  Dkt. 205.  By ruling that the law enforcement privilege applies, this Court has found that Michaud's need for the discovery—given his stated justification and the available alternatives—has not

1    overcome the interests of the government and the public in nondisclosure.  Therefore,

2    even if that information could be helpful to Michaud, the law enforcement privilege

3    shields it from production, and no sanction is required.

4        *Second*, in light of the Court's finding that the information—though properly

5    withheld from disclosure—remains material, should the Court find it necessary to impose

6    a sanction, that remedy must be no greater than necessary to cure any prejudice Michaud

7    might suffer.  Dismissal of the indictment, as Michaud requests, is an extreme sanction

8    that goes far beyond what is necessary or appropriate here and would amount to an abuse

9    of the court's discretion.  The Court has myriad options for fashioning a remedy, to

10   include precluding the government from admitting, as evidence at trial, either:  (1) the

11   specific information that has been withheld from the defense (i.e., additional FBI

12   computer code related to the execution of the NIT), (2) the specific data obtained directly

13   through the NIT (i.e., IP address information), and/or (3) child pornography that Michaud

14   obtained from the Playpen website (but not child pornography from other sources).  At

15   the very most, the Court could dismiss the count of the Indictment that is premised upon

16   images Michaud accessed from the Playpen website.

17       *Third*, if the Court believes that it must consider the extreme remedy of dismissing

18   some or all of the indictment, that question is not ripe for decision.  It would be

19   premature at this juncture, nearly four months before trial, for the Court to determine that

20   the extreme sanction of dismissal is necessary on the basis of Michaud's claimed inability

21   to evaluate a particular defense or defenses at trial.  As noted, Michaud can request and

22   the Court can grant lesser sanctions that would alleviate any concerns regarding the

23   government's ability to respond to a defense using previously withheld information.

24   Moreover, Michaud has substantial evidence and adequate alternatives available in order

25   to evaluate and mount his chosen defenses.  Ultimately, the question of whether he has

26   suffered prejudice from the authorized nondisclosure of the information is one that

27   necessarily will not ripen until trial.  And if indeed Michaud can make some showing of

28   prejudice, he will not be left without a remedy.

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.    ARGUMENT

**A.    A discovery sanction is unwarranted because the government's proper, court-approved invocation of the law enforcement privilege provides good cause for its nondisclosure of the NIT-related discovery and that doctrine provides for an appropriate balancing of the interests identified by the Court.**

As the Court stated in its written order following the hearing on the government's motion for reconsideration, it is understandably concerned about the balance between the government's justifiable interests in withholding the requested information and Michaud's right to a fair trial.  Application of the law enforcement privilege necessarily involves a balancing of the interests about which the Court is concerned and weighs in favor of no sanction to the government – even if the information at issue is material.[1]

Under Rule 16, "the court may, for good cause, *deny*, restrict, or defer discovery or inspection, or grant other appropriate relief."  Fed. R. Crim. Proc. 16(d) (emphasis added).  Further, as noted in the prior briefing on Michaud's motion to compel, courts may apply the qualified law enforcement or *Roviaro* privilege to bar disclosure of information, including that regarding investigative techniques and electronic surveillance, to a criminal defendant.  *See United States v. Roviaro*, 353 U.S. 53, 59 (1957); *United States v. Van Horn*, 789 F.2d 1492, 1507 (11th Cir. 1986); *United States v. Green*, 670 F.2d 1148, 1150 (D.C. Cir. 1981).

The government bore the burden of proving that the law enforcement privilege applies to information it seeks to withhold.  Through its *ex parte* pleading, the government has established—and the Court has found—that the NIT-related discovery is subject to the qualified law enforcement privilege.  Specifically, the Court has found that "the government ha[s] made a sufficient showing" to justify nondisclosure "even with a

---

[1] The government has contended—and still does—that Michaud failed to demonstrate that the requested information is material to his defense.  The government respectfully requested that the Court reconsider that portion of its ruling and the Court declined to do so.  If the Court had determined that the information were not material, no analysis of the law enforcement privilege doctrine would be necessary in order to bar disclosure.  That doctrine may still bar disclosure, however, of information the Court has deemed to be material.

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 3

1  Protective Order in place,"  Dkt. 205 at p. 3, and accordingly that it has "justifiably

2  elect[ed] to not disclose [the] discovery."  *Id.* at p. 1.

3       Once the government makes a showing that information is subject to the privilege,

4  the defendant bears the burden of showing that his need for the information overcomes

5  the public interest in nondisclosure.  *See United States v. Alvarez,* 472 F.2d 111, 113 (9th

6  Cir. 1973) (finding, regarding disclosure of informer's identity, that "in balancing the

7  interest of the government against that of the accused, the burden of proof is on the

8  defendant to show need for the disclosure."); *see also Van Horn*, 789 F.2d at 1507.  A

9  proper balance of those interests involves "taking into consideration the crime charged,

10 the possible defenses, the possible significance of the [privileged information], and other

11 relevant factors." *See Roviaro*, 353 U.S. at 629.  In order to tip that balance in the

12 defendant's favor, a defendant "must ordinarily show that he needs the evidence to

13 conduct his defense and *that there are no adequate alternative means of getting at the*

14 *same point.*" *United States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir.1982) (emphasis

15 added); *United States v. Rigmaiden*, 844 F. Supp. 2d 982, 991 (D. Ariz. 2012)("the Court

16 may consider not only the evidence that has already been disclosed" to Michaud "but also

17 whether there are alternative sources of information" upon which Michaud can rely.).

18 While the privilege is not absolute, there is a "'pretty strong presumption against lifting

19 it.'"  *In re The City of New York*, 607 F.3d 923, 945 (2d Cir. 2010) (quoting *Dellwood*

20 *Farms v. Cargill*, 128 F.3d 1122, 1125 (7th Cir. 1997)).

21      The Court has properly found that the government has justifiably withheld the

22 requested information from Michaud.  By finding that the government need not disclose

23 this information, the Court has appropriately considered the balance of these interests and

24 determined that Michaud's asserted need for the information—even if material—does not

25 overcome the government's and the public interest in nondisclosure.  Accordingly, the

26 law enforcement privilege properly shields the discovery of that information and provides

27 good cause for denial of that discovery without sanction to the government.

28

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.** **Dismissal of the indictment would be an excessive sanction given the availability of lesser sanctions that could cure any prejudice Michaud may suffer.**

As stated above, this Court is not required to impose any sanction, and the government's position is that none should be. In the event the Court, while balancing the legitimate government and defense interests involved, determines that some sanction is nonetheless appropriate, the extreme remedy of dismissal of the Indictment in this case is unwarranted. The Court has found that the government is not required to turn over the requested materials pursuant to a proper, good faith assertion of the law enforcement privilege. Absent findings of bad faith or willfulness combined with a desire to obtain a tactical advantage, even exclusion of evidence—let alone dismissal of an Indictment— would likely be legally excessive. In any event, the Court has myriad options short of dismissing the entire Superseding Indictment if it deems a sanction appropriate.

It is well settled that when faced with a discovery violation courts should not impose a sanction harsher than "necessary to accomplish the goals of Rule 16." *United States v. Gee*, 695 F.2d 1165, 1169 (9th Cir. 1983); *cf. United States v. Morrison*, 449 U.S. 361, 364 (1981) (noting in the context of a violation of the defendant's right to counsel "the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests"). The analysis focuses on fashioning a remedy to address actual "prejudice" to the defense. *Morrison,* 449 U.S. at 365. Even exclusion of evidence is an "appropriate remedy for a discovery rule violation only where the omission was willful and motivated by a desire to obtain a tactical advantage." *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) (citations and internal quotation marks omitted). Not only is there no evidence of willfulness or tactical motivation, the Court has found that the government has properly withheld and is not required to turn over the requested materials.

The doctrine regarding sanctions for lost or destroyed evidence also counsels a sanction, if any, short of dismissal. For example, an adverse jury instruction regarding evidence lost or destroyed by the government is appropriate when the balance "between

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   the quality of the Government's conduct and the degree of prejudice to the accused"

2   weighs in favor of the defendant. *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th

3   Cir.1979) (en banc) (Kennedy, J., concurring), *overruled on other grounds by United*

4   *States v. W.R. Grace*, 526 F.3d 499 (9th Cir.2008); *see also United States v. Sivilla*, 714

5   F.3d 1168, 1173 (9th Cir. 2013).  The government bears the burden of justifying its

6   conduct (which it has done here), and the defendant bears the burden of demonstrating

7   prejudice. *Id.*  In evaluating the government's conduct, a court should consider whether

8   the evidence was lost or destroyed while in the government's custody, whether it acted in

9   disregard of the defendant's interests, whether it was negligent, whether the prosecuting

10   attorneys were involved, and, if the acts were deliberate, whether they were taken in good

11   faith or with reasonable justification. *Id.* (citing *Loud Hawk*, 628 F.2d at 1152).  Factors

12   relevant to prejudice to the defendant include the centrality and importance of the

13   evidence to the case, the probative value and reliability of secondary or substitute

14   evidence, the nature and probable weight of the factual inferences and kinds of proof lost

15   to the accused, and the probable effect on the jury from the absence of the evidence. *Id.* at

16   1173-74 (citing *Loud Hawk*, 628 F.2d at 1152).  Significantly, in order to warrant

17   dismissal of a case based on lost or destroyed evidence, a showing of bad faith on the part

18   of the government is required.  *Loud Hawk* at 1170.  Here, there is no evidence of such

19   bad faith on the part of the government and, in fact, the Court has found that the

20   government's reasons for nondisclosure are appropriate.

21         With these basic principles in mind, the question of what, if any, sanction is

22   appropriate requires an assessment of the potential prejudice Michaud may suffer based

23   on the government's authorized withholding of discovery.  It is important to note that –

24   unlike the cases reviewed above – this case involves no misconduct or neglect by the

25   government.  To the contrary, this Court has found that the government is justified in not

26   producing the material at issue.  This fact alone weighs heavily against any sanction.

27         The analysis also looks to Michaud's need for the discovery at issue.  As described

28   herein, the withheld discovery is at best tangential to the charges (and can be rendered

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    irrelevant through sanctions less than dismissal).  Further, Michaud has ample secondary

2    or substitute evidence he can use to raise and suggest the same factual inferences he

3    wishes to support through review of the materials – that is, the accuracy of the NIT

4    results and the possibility of another actor compromising his computer and planting child

5    pornography.  Finally, the effect on the jury from the absence of the evidence can be

6    mitigated through sanctions short of dismissal and appropriate instructions from the

7    Court.  Accordingly, any prejudice Michaud may suffer would be minimal.  But even if

8    the court were to find more than minimal prejudice, that would only justify an adverse

9    jury instruction regarding the withheld evidence – not the extreme sanction of dismissal.

10   **C.    Dismissal of the indictment is unnecessary because any prejudice Michaud
          may suffer can be cured by lesser sanctions.**

11

12          For several reasons, dismissal of the indictment is an excessive remedy.  First, the

13   discovery may have some bearing on the evidence supporting Count 2, but it is tangential

14   to the government's proof of the remaining counts of the indictment.  Second,

15   notwithstanding his claims to the contrary, Michaud has at his fingertips everything he

16   might need to prepare an appropriate defense.  Finally, to the extent the Court remains

17   concerned that Michaud will be harmed by the government's refusal to provide this

18   discovery, dismissal of Count 2 and restricting the government from using information

19   about the NIT will address those harms.

20          **1.    The withheld discovery is tangential to the government's proof of two
                 of the three charges in the Superseding Indictment.**

21          As further described in the attached declaration of FBI Special Agent Sam Mautz,

22   the charges of receipt and possession of child pornography in Counts 1 and 3 of the

23   Superseding Indictment are premised upon evidence found on the thumb drives and

24   cellular phone seized from Michaud—and not on the "Playpen" activity of user "pewter

25   (Michaud)."  *See generally* Declaration of FBI Special Agent Samuel Mautz (Mautz

26   Decl.), attached as Exhibit A (summarizing the evidence and findings to date related to

27   the devices seized from Michaud's home and person); *id.* ¶ 19 (noting the evidence that

28   supports the specified counts in the Superseding Information).  In other words, proof that

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Michaud received and possessed the images found on his devices is independent of the

2   evidence of his use of "Playpen" and the evidence collected by the NIT that ties Michaud

3   to that "Playpen" activity.  *See id.* ¶ 19.

4       Only Count 2, charging receipt of child pornography, pertains to the activity of

5   "pewter" on "Playpen."  Although testimony about "Playpen" and the government's use

6   of a NIT to identify Michaud as "pewter" would constitute admissible evidence

7   pertaining to Counts 1 and 3, such evidence is not necessary for the government to prove

8   the essential elements of the charged crimes.  The disputed discovery is therefore utterly

9   irrelevant to, let alone central to, the government's proof at trial as to those counts.

10      **2.      Michaud has ample evidence to permit him to assess and raise his
            chosen defenses.**

11

12          **a.      Michaud can verify the accuracy of the NIT results obtained
                    from the search of his computer without additional discovery.**

13      Michaud has stated repeatedly that additional discovery related to the NIT is

14   essential if he is to be able to verify the accuracy of the data collected from his computer

15   by the NIT.  He is wrong.  Michaud has the computer instructions that generated the NIT

16   results, the NIT results recorded by the government, and access to the network data

17   stream reflecting the transfer of information by the NIT from Michaud's computer to the

18   government at the time it searched his computer.  The government has examined these

19   data and confirmed that the information the government reported receiving from the

20   NIT's search of Michaud's computer is identical to what the NIT collected and sent to the

21   government.  *See* Declaration of Special Agent Daniel Alfin in Support of Government's

22   Motion for Reconsideration (Alfin Decl., Dkt. 166-2) ¶¶ 11-15.  Michaud need not take

23   the government's word regarding that analysis.  He has, or has access to, everything he

24   needs to conduct such an analysis himself.  Thus far he has refused to do so.

25      Notably, one of Michaud's own experts discussed the value of the network data

26   Michaud refuses to review in another case that involved the use of a different NIT.  *See*

27   Miller Decl., Dkt 191-1 ¶ 10 ("With the cooperation of the government during discovery

28   in the Cottom case, we were also able to verify that the NIT only sent back the data that

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  was legally authorized by the search warrant issued in that case.").  Professor Miller goes

2  on to assert that the discovery available in this case, including the "data stream," will not

3  suffice for those purposes.  *Id.*  His assertion is curious given both his earlier comment

4  about the value of such data and the fact that he has not actually looked at the network

5  data offered by the government or the source code that generated those results.  As the

6  government has provided the only code that actually searched Michaud's computer and

7  the transmission of those search results, it is dubious that Michaud still insists he needs

8  more to test the accuracy of the NIT information recorded by the government.

9   **b.    Michaud can confirm that the NIT did not exceed the scope of**
10   **the authorizing warrant without additional discovery, and even**
11   **if he could not, the exclusionary rule will cure any prejudice he**
     **might suffer.**

12    Michaud also says that the additional discovery related to the NIT is necessary

13  because he must verify that the operation of the NIT did not exceed the scope of the

14  authorizing warrant.  Again, he is wrong.  Michaud has the source code that was

15  deployed to his computer and conducted the search.  He also has the results of that

16  search.  If the government had the ability to search for additional information outside of

17  the scope of the authorizing warrant, then surely that would be revealed by an

18  examination of the source code itself or the information transmitted as a result.  Yet

19  Michaud has made no such claim.

20    What Michaud demands is proof of a negative.  The government has given to

21  Michaud all of the computer instructions responsible for conducting the search of his

22  computer and the results of that search.  It is no answer for Michaud to claim that he

23  requires additional discovery so he can be certain the government has not concealed some

24  other search for other information.  And even if Michaud were correct, there is no threat

25  of prejudice by the government's withholding discovery on that point.  The exclusionary

26  rule would ensure that, if there were any evidence collected by the NIT that exceeded the

27  scope of the authorizing warrant, it could not be used against him.

28

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### c. Michaud knows everything he needs to know about the NIT for purposes of developing his malware defense.

Michaud also says that the additional NIT-related discovery—particularly the "exploit"—is necessary so that he can assess the viability of and if appropriate, develop a defense theory premised on the notion that malware, not Michaud, explains the presence of thousands of images of child pornography found on his devices.  Michaud's approach is flawed, however.

Discovery about the exploit involved in this investigation—and as a result, the specific software vulnerability used by it to deploy the NIT—might show one way that malware could get onto a device but says nothing about *whether* any specific malware actually did.  Put another way and in terms the Court has used previously, discovery about the exploit could identify one means by which someone could have "hacked" Michaud's computer but says nothing about whether it was actually "hacked" or what happened after it was "hacked."  Indeed, discovery about the exploit would identify only a single vulnerability by which Michaud's devices could have been compromised, not every potential security weakness that may have exposed him to such attacks.  Moreover, the code that the government sent to Michaud's computer via the exploit and vulnerability has been provided to him for analysis.

Michaud is already well aware that it is possible for someone to exploit a security weakness and then commandeer an innocent user's device for their own malevolent purposes.  Whether that happened here and whether Michaud was the unwitting victim of a hacker seeking to use his devices to store child pornography is a story only the devices themselves can tell.  Michaud has hired five purported experts who can assist him with developing such a defense at trial.  He has access to and the ability to examine the computers and devices on which the child pornography evidence that makes up the charges in this case is stored.  Accordingly, the withheld discovery will not prejudice his efforts to evaluate and, if he wishes, raise such defenses.

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to Dismiss  - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2

### 3.     Any prejudice, if it exists, resulting from Michaud's inability to review the Nit-related discovery would be cured by dismissal of Count 2 and barring the government from relying on evidence about the NIT.

3

4      In its May 18 Order, the Court expressed concern that notwithstanding the

5   government's assurances to the contrary, Michaud's ability to prepare a defense and

6   receive a fair trial may still suffer if he is not granted discovery.  As the Court observed,

7   the discovery might, in the "hands of a defense lawyer with a fertile mind, be a treasure

8   trove of exculpatory evidence."  Dkt. 205 p. 4.  Even if the discovery reveals inculpatory

9   evidence, the Court continued, a "defendant who knows that the government has

10  evidence that renders his planned defense useless can alter his trial strategy.  Or he can

11  seek a plea agreement instead of going to trial."  *Id.* (quoting *United States v. Muniz-*

*Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013)).

12      A sanction far short of dismissal of the indictment can address any concerns the

13  Court may have along these lines.  Specifically, dismissal of Count 2 combined with a

14  prohibition on the government's use of evidence about the NIT at trial will ensure that the

15  government's authorized withholding of the contested discovery will neither deny him a

16  fair trial nor lull him into a false sense of security that a particular defense may be his

17  savior only to have that defense countered by evidence the government withheld.

18      First, dismissal of Count 2 would eliminate any danger that Michaud's inability to

19  review the additional NIT-related discovery will not deny him potentially helpful or

20  exculpatory evidence.  This is because, as noted above and set forth in greater detail in

21  the attached declaration of Special Agent Sam Mautz, the evidence supporting Counts 1

22  and 3 are based on evidence seized during the search of Michaud's home and person.

23  Mautz Decl. ¶ 19.   The NIT and the information it collected from Michaud's computer

24  would be essential to attributing the activity of "pewter" to Michaud and thus proving

25  that he knowingly received child pornography from Playpen to support Count 2.  For

26  Counts 1 and 3, in contrast, the government's proof at trial has nothing at all to do with

27  the NIT.  So even if there were information helpful to Michaud within the discovery that

28

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 the government seeks to withhold, dismissal of Count 2 will ensure that his lack of access
2 to the information will in no way prejudice him at trial.

3      Second, precluding the government from offering evidence about the NIT will
4 address the concern highlighted by the Court's invocation of *Muniz-Jaquez*.  The concern
5 expressed by the Court is one the Ninth Circuit has recognized on several occasions.
6 Specifically, that court embraces a definition of materiality that ensures a defendant will
7 not be led down the primrose path to trial only to find the government in possession of an
8 undisclosed evidentiary trump card that will render his chosen defense a nullity.
9 Preventing the government from using information it is unwilling to share with Michaud
10 ensures that he will avoid such a fate.  Michaud will be free to evaluate the merits of any
11 particular defense strategy and seek a plea agreement or trial as he chooses without fear
12 the government will blindside him.

13      In this context, it is important to distinguish between the exclusion of evidence at
14 trial and the suppression of evidence.  It is also important to distinguish between the
15 specific, limited information directly obtained via the NIT (namely, the IP address of
16 "pewter") and the evidence that was the eventual fruit of the IP address data (namely, the
17 child pornography and other evidence obtained when Michaud's home and devices were
18 searched).  The Court can prevent the government from admitting particular evidence at
19 trial – such as the IP address data obtained by the NIT, or testimony relating to the use of
20 the NIT – without suppressing the child pornography that was the eventual fruit of IP
21 address information obtained via the NIT.  Suppression is not appropriate here, as that
22 remedy is a deterrent for law enforcement misconduct.  Here, there has been no law
23 enforcement "misconduct" with respect to the discovery at issue – to the contrary, the
24 Court has authorized the government not to disclose it.  Thus, if any remedy is
25 appropriate, it is the exclusion of specific evidence at trial, not the suppression of all of
26 the evidence that was the ultimate fruit of the NIT.

27
28

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**D.      Dismissal of charges would be premature because Michaud retains the availability to evaluate and develop whatever potential defenses he chooses.**

Dismissal of any or all the charges in the indictment would also be premature. Michaud demands dismissal else he will be unable to prepare an appropriate defense. That is a question to be answered after Michaud has been given the opportunity to develop and present whatever appropriate defenses he chooses to present.  At this point, the issues at trial, and the nuances of possible defense, are abstract.  At trial, these matters would be fleshed out and become far more concrete.  The Court would then be in a much better position to make an informed decision about possible remedies.

*United States v. Budziak* is instructive here.  In that case, the trial court initially denied discovery regarding the source code pertaining to a peer-to-peer computer program used by law enforcement to download child pornography from the defendant's computer, which the Ninth Circuit found on appeal to have been critical to the government's evidence regarding counts charging distribution of child pornography at trial.  697 F.3d 1105, 1111-13 (9th Cir. 2012).  The Ninth Circuit remanded the case not to enter an order of dismissal of the Indictment, but so that the trial court could make a determination regarding whether, based upon the evidence presented at trial, the withheld discovery would have made a difference in the outcome of the trial.  *Id*. at 1113.  On remand, the district court in *Budziak* found—and the Ninth Circuit affirmed—that Budziak had failed to make such a showing regarding a possession count that was unrelated to the use of that software. *United States v. Budziak ("Budziak II")*, 612 F. App'x 882, 884-85 (9th Cir. 2015).

Here, the Court has the ability through sanctions short of dismissal of the Indictment to ensure that the discovery justifiably withheld from the defendant is not information critical to the government's evidence at trial.  Further, at this stage, Michaud's suggestion that he will not be able to assert his defense that someone other than he was responsible for the child pornography found on his devices is simply untenable.  He has five purported expert witnesses from whom he may seek to present admissible testimony regarding the potential for vulnerabilities in computers to be

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

exploited, and access to the devices on which the charged child pornography was stored
in order to seek admissible evidence to support such a hypothesis.  Indeed, as outlined in
the declaration of SA Mautz, which contains a mere summary, there is substantial
evidence to be examined on the devices alone.  *See generally* Mautz Decl.  And as the
declaration of Special Agent Alfin demonstrates, it is possible – in fact, the usual practice
– to do a thorough "malware" analysis by examining the devices allegedly subject to the
malware.   *See* Declaration of FBI Special Agent Daniel Alfin, attached as Exhibit B.

But the question of whether the justifiable withholding of the additional discovery
would make a difference in the outcome of a trial is un-ripe until there is a trial.  Michaud
may develop whatever appropriate defense he chooses to assert and, in the event he is
convicted or some or all charges, may move for appropriate relief during or after trial if
he is in fact prejudiced by the withholding of the requested discovery.

### III.    CONCLUSION

For the reasons stated above, no discovery sanction should be imposed because
there is good cause for the Court to deny discovery.  And even if the Court disagrees, a
sanction far short of dismissal will cure any prejudice that Michaud if he is denied
discovery.  Finally, a remedy of dismissal would be utterly premature.

DATED this 19th day of May, 2016.


ANNETTE L.  HAYES                           Respectfully submitted,
United States Attorney                      STEVEN J.  GROCKI
                                            Chief

*/s/ Matthew P. Hampton*                    */s/ Keith A. Becker*
MICHAEL DION                                KEITH A. BECKER
MATTHEW P. HAMPTON                          Acting Assistant Deputy Chief
Assistants United States Attorneys          Child Exploitation and Obscenity
700 Stewart Street, Suite 5220              Section
Seattle, Washington 98101                   1400 New York Ave., NW, Sixth Floor
Telephone:  (206) 553-7970                  Washington, DC 20530
Fax:         (206) 553-0755                 Phone: (202) 305-4104
E-mail: matthew.hampton@usdoj.gov           Fax: (202) 514-1793
                                            E-mail: keith.becker@usdoj.gov

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

<div style="margin-left:40%">

*s/Emily Miller*
EMILY MILLER
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-2267
FAX:   (206) 553-0755
E-mail: emily.miller@usdoj.gov

</div>

*United States v. Michaud* CR15-5351RJB
Government's Submission Regarding Discovery Sanction and Defendant's Motion to
Dismiss  - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970